J-S34003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SKILER ADAM BOOSE, | |
| Appellant | No. 1074 MDA 2014 |

Appeal from the Judgment of Sentence May 27, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0002981-2013

BEFORE:  BOWES, OTT and STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 22, 2015**

Skiler Adam Boose appeals from the judgment of sentence of six and one-half to thirteen years imprisonment that the trial court imposed after a jury convicted Appellant of rape, sexual assault, reckless endangerment, simple assault, and terroristic threats.  We affirm.

The trial court outlined the violence that Appellant perpetrated upon his then girlfriend and her two children over the course of twenty-four hours:

> On Sunday 13 October 2013, Victim took a sleeping pill. Victim awoke the next day to find the underwear she wore to bed lying on the floor.  She confronted Defendant, and he admitted to having sex with her while she slept.  Victim testified that she was confused and disgusted but overall did not really know how to react to the actions of Defendant.  While she tried to process what had happened, Victim and Defendant followed their normal morning routine, which included Victim dropping Defendant off at work.  When Victim picked up Defendant from work, she was not in an amorous mood, and Defendant took

offense to her mood. Defendant insisted that Victim should just forget about the incident because the incident was in the past.

In response, Victim asserted that Defendant would not be allowed to treat Victim like Defendant had treated her in the past. Defendant became angry, pushed Victim onto the bed, picked up her son, ran down the hallway, and locked himself and Victim's son in the bathroom. Victim, her son, and her daughter were crying and screaming during this time. Within two minutes, Defendant emerged, "practically threw her son at her" and told Victim "he could do whatever he wanted to do."

Following this incident, Victim resigned herself to calming the children and trying to reinitiate the normal night-time routine. Victim testified that, at this time, she felt that her relationship with Defendant was over, but she did not feel safe trying to escape because she was worried about the children's safety, as Defendant was in the same [motel] room as the Victim and her children. Furthermore, Victim testified that, for the same reasons, she felt she could not safely call for help, despite having a cellular telephone. At some point, Victim texted a friend, inquiring about a cheaper place to live, and Defendant took Victim's phone from her, claiming that they would remain living together.

After the children were put to bed, Defendant made sexual advances toward the unwilling Victim and "held her hands above her head and pushed off her pants and her underwear and had sex with her." During this time, Victim cried and repeatedly told Defendant "no" in a voice that was loud enough to wake her children. Defendant told Victim again that he could "do whatever he wanted" and that if she didn't shut up he would kill her and the kids." Due to the commotion, Victim's children woke up. Victim calmed down the children and put her children back to bed, and then, at the behest and promise of no wrongdoing by Defendant, Victim took another sleeping pill and begrudgingly returned to bed. Victim resisted the effects of the sleeping pill, and her resistance seemed to infuriate Defendant. Defendant pulled Victim across the bed and, as Victim fought against him, Defendant "pulled her leg so hard it felt like it had gone out of place." While pulling Victim's leg, Defendant put a pillow over her face and put his arm across her throat.

- 2 -

The fighting again woke Victim's daughter, who stood near the bed, crying. Defendant produced a box cutter and held it to Victim's throat while Defendant simultaneously covered Victim's daughter's face with his hand and pushed the child back into the bed. Throughout this altercation, Defendant repeatedly told Victim that he "could do whatever he wanted," that he knew how to hurt Victim "without leaving marks," and that he would kill the children if Victim did not stop screaming. Victim again testified that she did not feel as though she and her children could safely leave the motel room in order to escape Defendant.

After the altercation concluded, Defendant forced Victim to sleep in the bed with him "where she f---king belonged." Again, Defendant made sexual advances toward Victim. Although Victim did not want to engage in sexual activity with Defendant, Victim "just let him have sex with [her] and did not fight or scream this time." Eventually, Victim managed to sleep for approximately thirty minutes, near 5:00 a.m. on 15 October 2013. When Victim awoke, she and Defendant followed their normal morning routine, and she dropped him off at work.

After dropping Defendant off at work, Victim returned to the motel, packed her belongings, and filed a police report. Victim filled out a written statement. Next, at the suggestion of police, Victim made a phone call to Defendant and attempted to elicit statements concerning the events that had transpired. That same day, Victim visited a hospital to undergo a rape kit, but the tests were inconclusive because Victim had previously been having consensual sex with Defendant. In addition, police escorted Victim to the motel and, with her permission, searched the room and took the box cutter as evidence. Lastly, police interviewed an occupant of a neighboring motel room who testified at trial that, on the nights in question, she heard yelling and arguments coming from Victim and Defendant's room but had chosen not to call police.

Trial Court Opinion, 9/15/14, at 3-7 (footnotes omitted).

Appellant raises the following issues for our review:

I. Whether the trial court erred in denying [Appellant's] post-sentence motions because there was insufficient evidence to prove every element of the charges beyond a reasonable doubt

- 3 -

to support the verdicts of guilt even viewing the evidence in favor of the Commonwealth.

II. Whether the trial court abused its discretion in denying [Appellant's] motion in *limine* and permitting, over objection, the clandestine telephone recording between complainant and Appellant which had miniscule probative value and was outweighed by the fear and emotion it instilled in the jury swaying them to convict [Appellant] when he made no admissions on the recording.

III. Whether the trial court abused its discretion when sentencing Appellant where the trial court failed to consider Appellant's rehabilitative needs, the particular circumstances of the offenses, and, instead, focused exclusively on the severity of offenses as charged.

Appellant's brief at 8.

Appellant's first contention relates to the sufficiency of the evidence.

Our standard of review in this context is as follows:

Whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa.Super. 2015).

Appellant first maintains his conviction of rape[1] is infirm since the Commonwealth did not establish the element of forcible compulsion. He suggests that "Commonwealth's case failed to prove that [Appellant] sufficiently frustrated Ms. Metzger's will to resist having sexual intercourse with her then boyfriend so as to constitute forcible compulsion[.]" Appellant's brief at 21. Rape is committed, in relevant part, when a person "engages in sexual intercourse with a complainant . . . by forcible compulsion." 18 Pa.C.S. § 3121(a)(1). Forcible compulsion is defined as, "Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101. Thus, "in order to prove the 'forcible compulsion' component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant used either physical force, a threat of physical force, or psychological coercion[.]" **Commonwealth v. Eckrote**, 12 A.3d 383, 387 (Pa.Super. 2010). The crime of rape is not proven when the Commonwealth establishes nothing more than a lack of consent. **Id**.; **Commonwealth v. Berkowitz**, 641 A.2d 1161 (Pa. 1994).

Herein, the victim did much more than indicate that she did not want to engage in intercourse. While she was crying no, Appellant held the

_____

[1] Appellant was not charged in connection with the incident where he had sex with the sleeping victim. His rape conviction is premised upon the October 14, 2013, assault.

victim's hands and forcibly removed her clothes. The victim fought Appellant, who threatened to kill her and her children if she did not permit him to engage in sexual intercourse. Then, Appellant pulled the victim's leg, placed a pillow over her face, and put his arm across her neck. Finally, he placed a box cutter against her throat. Appellant's actions clearly constituted physical force. In addition, Appellant's threat to kill the victim and her children was a threat of physical force. Hence, the element of forcible compulsion was present herein. ***Eckrote***, ***supra***.

Appellant also assails the evidence supporting his simple assault and terroristic threats convictions. His specific argument is that his threats were made impulsively and in the heat of the moment during a domestic dispute. He maintains that he had no intent to place the victim in fear. A person commits simple assault if he, in relevant part, "attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S. § 2701(a)(3). A person is guilty of terroristic threats if he, *inter alia*, "communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). Mere spur-of-the moment threats made during the course of an argument with the victim do not constitute terroristic threats. ***Commonwealth v. Tizer***, 684 A.2d 597 (Pa.Super. 1996).

Initially, we reject Appellant's position that his threats occurred during a heated argument. He assaulted the victim, and she was resisting that

assault.  In order to overcome the victim's physical resistance to his sexual assault, Appellant threatened to kill her, put a pillow over her face, and held a box cutter against her throat.  At that time, the victim simply was not involved in any type of verbal exchange with him.  Hence, we reject Appellant's position that his threat was impulsively made in the course of a heated discourse with the victim.

Appellant committed physical menace consisting of placing a pillow on the victim's face, his arm on her throat, and a box cutter against her throat. He then threatened her with serious bodily injury, *i.e.*, death.  This proof established an intent to terrorize her, and, concomitantly, the crime of simple assault.  Appellant threatened to commit a crime of violence, murder, so that the victim would cease her resistance to his sexual assault.  He likewise evidenced an intent to carry through with that threat by placing a pillow on her face and a box cutter against her throat.  Thus, his conviction of terroristic threats is based upon sufficient proof.

Finally, Appellant challenges the sufficiency of the evidence as to his conviction of reckless endangerment, which is committed when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  18 Pa.C.S. § 2705.  Appellant maintains that the Commonwealth presented no proof that he had the actual ability to kill or cause serious bodily injury since there was no indication that the box cutter blade was exposed when he put it against the victim's throat.

Whether or not the blade was exposed at that precise moment is of no consequence herein. The fact remains that Appellant had a box cutter with a blade and thus had the present ability to cut the victim's neck with the blade. Additionally, he had a pillow and could have smothered the victim. Finally, he could have choked the victim with the arm that he placed against her neck. Since Appellant had the present ability to inflict death or serious bodily injury on the victim, we reject this challenge to the reckless endangerment conviction.

Appellant's second complaint is that the probative value of a recorded conversation that he had with the victim was outweighed by its prejudicial effect, and that the trial court erred in permitting its use by the Commonwealth. The conversation was recorded the day after the assault, after the victim went to police and reported the crimes.[2]

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that

_____

[2] Appellant herein does not claim that the telephone conversation was intercepted in violation of the Wiretapping and Electronic Surveillance Control Act. 18 Pa.C.S. §§ 5701 *et seq.* We note that no court approval is required for the intercept of a conversation when one party to it agrees to the recording and when a designated assistant district attorney or district attorney authorizes the intercept. 18 Pa.C.S. § 5704(2)(ii).

evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa.Super. 2014) (citation omitted).

Herein, Appellant's argument is based upon the premise that "the recording did not possess the essential evidentiary value in relation to the Commonwealth's burden of proof, *i.e.*, the recording did not prove or disprove whether the Defendant committed any of the essential elements of the misdemeanor or felony charges beyond a reasonable doubt." Appellant's brief at 32-33. We first reject Appellant's flawed suggestions that a statement is incriminatory only if the defendant specifically admits to commission of an element of a crime. Herein, the recorded conversation was highly inculpatory.

When the victim called Appellant, he was expecting her to be in the process of retrieving him from work. After he responded to her telephone call, Appellant asked where she was. She responded that she was not going to come get him because he placed her and her children in danger the previous night. Appellant admitted that he had endangered them by responding, "I'm not gonna f____'n hurt you **anymore**." Commonwealth's Exhibit 4 at 2 (emphasis added). The victim then insisted, "I'm not going to pick you up. I'm not gonna let you hurt me or the kids again." ***Id***. Appellant rejoined with, "I'm not going to." ***Id***. at 3. The victim retorted,

"You said that last night and you hurt me again." *Id*. Appellant then said, "I'm trying, okay, I'm done with that. It's over, done with. I'm done." *Id*. Thus, Appellant again admitted that he had hurt her the previous night.

Next, Appellant acknowledged that he had committed an element of the offenses of rape and simple assault. Specifically, the victim accused Appellant of having the victim's daughter "on the bed with us whenever you were putting a pillow over my face and your arm across my neck, across my throat." *Id*. at 4. Appellant said, "**Okay, yes I know**." *Id*. (emphasis added). Thus, Appellant admitted to the "forcible compulsion" element of rape and to physically menacing the victim. When the victim continued to refuse to retrieve Appellant, he threatened her again, saying "Don't f___'n piss me off or when I do f___'n find your ass I am gonna f___'n kill you." *Id*. Thus, we conclude that the taped conversation was relevant in that it had a tendency to establish that Appellant was guilty.

Appellant's secondary argument in connection with the tape's introduction is that the recorded conversation was unfairly prejudicial. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403; *see Antidormi*, *supra*. The comment to Pa.R.E. 403 clarifies the definition of unfair prejudice, which "means a tendency to suggest decision on an improper basis or to divert the

jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, Comment.

The fact that Appellant made inculpatory remarks is not an improper basis for a verdict; otherwise, confessions would be inadmissible. Indeed, evidence is not excluded as prejudicial based upon the fact that it is harmful to a defendant. *Antidormi*, *supra*. Exclusion of probative evidence is "limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Id*. at 750. Nothing in the taped conversation incited the jury to make a decision upon a basis other than the applicable law. Hence, we affirm the trial court's evidentiary ruling herein.

Appellant's final position is that we should reverse the sentence as manifestly unreasonable since the sentencing court focused "exclusively on the severity of the offenses" and "failed to consider many existing mitigating factors, such as Appellant's personal background, his personal characteristics, his relative culpability, and his prospects for rehabilitation." Appellant's brief at 35. This sentencing issue is waived because no objection to the sentence was made during the sentencing proceeding and Appellant did not file a post-sentence motion. *Commonwealth v. Trinidad*, 96 A.3d 1031 (Pa.Super. 2014). Furthermore, the sentencing court had a pre-sentence report, and we are therefore required to presume that it weighed

- 11 -

the mitigating factors herein. ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988); ***Commonwealth v. Griffin***, 65 A.3d 932 (Pa.Super. 2013).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2015